IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| TODD SHANE RICHARDSON, ET AL. | § | |
| VS. | § | CIVIL ACTION NO. 6:10cv119 |
| CITIMORTGAGE, INC., ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiffs Todd Shane Richardson and Amanda A. Richardson, proceeding *pro se* and *in forma pauperis*, filed this civil lawsuit in an effort to stop a foreclosure on their home. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

The present Memorandum Opinion concerns a motion to dismiss filed by Defendant Southside Bank (docket entry #16), a motion for summary judgment filed by Defendants CitiMortgage, Inc. ("CitiMortgage") and Mortgage Electronic Registration System, Inc. ("MERS") (docket entry #17), and a motion to dismiss filed by Brice, Vander Linden & Wernick, P.C. (docket entry #31), along with the various responses.

Facts of the Case

The Plaintiffs purchased their home, located at 2040 Dressage Lane in Tyler, Texas, on January 17, 2006. The house was purchased with a home loan from Southside Bank in Tyler. The loan was secured by a Note signed by the Plaintiffs and an officer from Southside Bank. The Note specified that Southside Bank was the Lender and that the "Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the

1

'Note Holder.'" The Plaintiffs also signed a First Payment Notice, where they acknowledged CitiMortgage to be the Loan servicer and entitled to receive payments on the Note and to enforce the Note.

The Note was secured by a Deed of Trust lien payable to the Lender, which was again identified as Southside Bank. The Deed of Trust utilized a standard Fannie Mae/Freddie Mac form used in Texas for secured transactions involving MERS. The Deed of Trust included the following provision regarding the transfer of rights in the property:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the [property].

MERS was defined as Mortgage Electronic Registration Systems, Inc., a separate corporation acting solely as nominee for Lender and Lender's successors and assigns. MERS was identified as a beneficiary under the Security Instrument.

The Deed of Trust identified the role of MERS in securing the rights of the Lender, including the prospect of foreclosure, as follows:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Interest, but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

The Plaintiffs signed the Deed of Trust and began making mortgage payments to CitiMortgage. On January 2, 2006, a Transfer of Lien was filed with the Smith County Clerk indicating that Southside Bank, holder of the Note and Lien, transferred them for value to City National Bank.

The Plaintiffs, however, stopped making mortgage payments. They have not made a payment since December 2008. As of June 2010, the unpaid principal was $378,507.84, and the Plaintiffs had an arrearage exceeding $64,150.00. The Plaintiffs also filed for bankruptcy protection. On March 25, 2009, MERS, as nominee for Southside Bank, assigned its beneficial interest in the Deed of Trust to CitiMortgage. A Transfer of Lien document was filed with the Smith County Clerk. On July 20, 2009, the United States Bankruptcy Court in Tyler lifted the automatic stay with respect to the property and authorized CitiMortgage to foreclose on its lien and to sell the property. The order specified that the stay as to CitiMortgage would be lifted effective January 18, 2010.

The property was posted for foreclosure on April 6, 2010. However, on April 5, 2010, the Plaintiffs filed the present lawsuit in an effort to stop the foreclosure. They sought declaratory and injunctive relief against the Defendants regarding CitiMortgage's authority to foreclose on the property. They challenged the role of MERS with respect to the transfer of rights in the property. They finally asked that the trustee sale scheduled for April 6, 2010, be vacated. It is noted that the foreclosure sale was cancelled due to the filing of this lawsuit.

## Discussion and Analysis

The first motions that should be considered are the motions to dismiss filed by Defendant Southside Bank (docket entry #16) and Defendant Brice, Vander Linden & Wernick, P.C. (docket entry #31). Southside Bank argued that the claims against it should be dismissed because the Plaintiff's admitted in paragraph 42 of the complaint that "Southside Bank was no longer the owner of the note because they sold it in 2006." Southside Bank argued that the allegations in the complaint reveal that they have no interest in this matter, thus they should be dismissed from the lawsuit.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court clarified the standards that apply in a motion

3

to dismiss for failure to state a claim in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The Supreme Court held that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." *Id.*

The facts as alleged by the Plaintiffs reveal that Southside Bank is no longer involved in this matter. Southside Bank agreed. Southside Bank is not involved in the foreclosure in any respect. The Plaintiffs have not alleged any facts against Southside Bank showing that they are entitled to relief against it. The motion to dismiss should be granted.

Brice, Vander Linden & Wernick, P.C., also argued that the Plaintiffs have not stated any claim against the firm upon which relief may be granted. The allegations by the Plaintiffs show only that the firm submitted the transfer of lien document transferring the lien from MERS to CitiMortgage on April 8, 2009. The Plaintiffs have not shown that the firm caused any injury to them. The motion to dismiss should be granted.

The final motion to consider is the motion for summary judgment filed by CitiMortgage and MERS (docket entry #17). Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex,* 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

The thrust of the lawsuit is the Plaintiffs' challenge to the right of CitiMortgage to foreclose on the property. The competent summary judgment evidence reveals that Southside Bank transferred all of its rights to CitiMortgage, although the transfer of lien in 2009 was made via MERS. When Southside Bank endorsed the Note to CitiMortgage, then CitiMortgage became entitled to enforce the

5

Note. Tex. Bus. & Comm. Code § 3.205. Southside Bank's transfer of the Note to CitiMortgage made CitiMortgage a "successor and assign" of the "Lender," and a "Note Holder" as those terms are defined in the Note, who is entitled to enforce the Note. Tex. Bus. & Comm. Code § 3.201. Also, in the loan documents, the Plaintiffs expressly acknowledged and agreed that CitiMortgage was the Loan servicer, that it was entitled to receive payments on the Note, and that it was entitled to enforce the Note. CitiMortgage is entitled to enforce the loan agreements, which may include foreclosure. The Plaintiff's arguments presented in an effort to stop foreclosure lack merit.

CitiMortgage also appropriately argued that the Plaintiffs are judicially estopped from denying its right to enforce the Note and Deed of Trust. The Plaintiffs represented to the United States Bankruptcy Court for the Eastern District of Texas that CitiMortgage was the creditor on the property. Mr. Richardson represented that it was his intention to surrender the property to CitiMortgage. As a result of these representations, on July 20, 2009, the bankruptcy trustee acknowledged and agreed, and the Bankruptcy Court found that the Plaintiffs could not pay for casualty insurance for the property or property taxes on the property, that it was in the best interest of Mr. Richardson's estate that the property be sold, and that the automatic stay should be lifted. CitiMortgage argued that the Plaintiffs acknowledged and agreed in the Bankruptcy Court, under penalty of perjury and in separate court proceedings, that CitiMortgage has a valid, undisputed lien on the property for the remaining balance of the Note.

CitiMortgage appropriately cited *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), in arguing that the Plaintiffs are judicially estopped from taking the position that it may not foreclose on the property. *In re Coastal Plains*, like the present case, concerned judicial estoppel in the context of a bankruptcy proceeding. The Fifth Circuit made the following comments:

6

> Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest". *Id.* . . . Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. . . .
>
> The doctrine is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3rd Cir. 1953). . . .
>
> Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept the previous position.

*Id.* at 206-06 (footnotes omitted). A debtor is required to disclose all potential claims in a bankruptcy petition and must amend his schedules if circumstances change. *Id.* at 205. When a debtor fails to disclose a pending or potential claim in his bankruptcy petition, he is judicially estopped from bringing that claim later. In the present case, the Plaintiffs failed to include their present claims in the prior bankruptcy proceedings, even though these claims on their face are claims that would have accrued before they filed the bankruptcy proceedings.

The Plaintiffs' position in this lawsuit is the opposite of the representations they made to the Bankruptcy Court, and they should not be allowed to advance such positions. They should not be allowed to "play fast and loose" with the courts in order to avoid foreclosure. The Bankruptcy Court lifted the automatic stay and permitted CitiMortgage to foreclose on the loan because of the Plaintiff's representations. As a matter of law, the Plaintiffs are judicially estopped from challenging the right of CitiMortgage to foreclose on the loan.

The Plaintiffs also complained about the role of MERS with respect to the enforcement of the Note and Deed of Trust. The role of MERS was clearly established in the Deed of Trust, as follows:

7

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Interest, but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

Under Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale. *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App. - Eastland 2010). MERS was the nominee for Southside Bank and its successors and assigns. MERS had the authority to transfer the rights and interests in the Deed of Trust to CitiMortgage. The Plaintiffs' complaints about the role of MERS in this matter lacks merit.

It is further noted that the role of MERS has been the subject of federal multidistrict litigation in *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, 659 F.Supp.2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009). The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. *Id.* at 1370. The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale. *Id.* at 1370 n.6. MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system," which means a "national book system for registering a beneficial interest in security instrument and its successors and assigns." As noted in *Athey*, mortgage documents provide for the use of MERS and the provisions are enforceable to the extent provided by the terms of the documents. The role of MERS in this case was consistent with the Note and Deed of Trust.

Finally, the Plaintiff's sought to stop the foreclosure sale of April 6, 2010. The sale was postponed due to the filing of this lawsuit. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). The issue of the foreclosure sale

on April 6, 2010, is moot. However, in light of the conclusion that CitiMortgage had every right to foreclose on the property, CitiMortgage may schedule another foreclosure sale, which should not be postponed due to the pendency of any lawsuit in this Court. It is therefore

**ORDERED** that the motions to dismiss filed by Southside Bank (docket entry #16) and Brice, Vander Linden and Wernick, P.C., (docket entry #31) are **GRANTED**. It is further

**ORDERED** that the motion for summary judgment filed by CitiMortgage and MERS (docket entry #17) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **22** day of **November, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE